UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Shawn Liggons,                                         Case No. 3:20-cv-1208

                   Plaintiff,

       v.                                                      MEMORANDUM OPINION
                                                                       AND ORDER

General Motors, LLC, *et al.*,

                   Defendants.

## I. INTRODUCTION

Plaintiff Shawn Liggons asserts claims against his employer (General Motors, LLC), and his union (United Automobile, Aerospace and Agricultural Implement Workers of America, Local 14), alleging GM and the Union discriminated against him on the basis of his race and disability, and also retaliated against him for engaging in activities protected by Title VII of the Civil Rights Act. (Doc. No. 1). GM filed a motion to dismiss Liggons' claims, arguing those claims actually are untimely hybrid § 301 / fair representation claims. (Doc. No. 12). Liggons filed a brief in response, (Doc. No. 13), and GM filed a brief in reply. (Doc. No. 14). For the reasons stated below, I grant GM's motion in part and deny it in part.

## II. BACKGROUND

Liggons is an African American male who suffers from Post Traumatic Stress Disorder and Major Depression. (Doc. No. 1 at 3, 10). Liggons began working at GM as a temporary employee before being hired on a permanent basis in February 2016. (*Id.* at 4). He alleges he filed four

grievances in 2016 concerning suspensions GM had imposed on him and that the "suspensions were discriminatory on the basis of race and not authorized per contractual language." (*Id.*). He asserts he filed a fifth grievance because GM gave "away his work responsibilities [to] someone of less seniority." (*Id.*). Liggons also asserts he previously filed charges of discrimination against GM in October 2017 and April 2018, and against the Union in October 2017 and August 2018. (*Id.*).

He alleges that after he filed these charges of discrimination, GM denied him a pay raise he was entitled to receive on October 1, 2018, and that he has not yet received this raise. (*Id.*). He also alleges the "Union failed in its duty to represent him on the pay raise issue based on racially discriminatory animus." (*Id.*).

Liggons contends he has improperly been disciplined for absenteeism, which culminated in his suspension "for violations under the Document 8 attendance program . . . from April 10, 2019 to May 31, 2019." (*Id.*). He alleges this suspension was unwarranted because GM "failed to consider language indicating that absences cause[d] by personal or unforeseeable problems will be addressed in a reasonable and responsible manner." (*Id.* at 4-5). He also asserts GM "continued to harass him after he returned from his suspension on June 1, 2019." (*Id.*).

Liggons has pled four causes of action. The first alleges racial discrimination in violation of Title VII, through GM's denial of the pay raise and "giving away his work responsibilities," his 2016 suspensions, a 30-day suspension in January 2018 for absenteeism, and his 2019 absenteeism suspension. (*Id.* at 6-7). He also alleges the "Union has worked together with [GM] . . . in bringing about his disparate treatment," and that the Union acted with discriminatory animus when it failed to represent him on these "disciplinary and wage issues that clearly breached the labor contractual provisions." (*Id.* at 7). Finally, he contends similarly situated but non-protected individuals were treated more favorably by both Defendants and that GM's explanations for its disciplinary sanctions, its denial of raises, and its harassment "were and are false and pretextual." (*Id.*).

Liggons' second cause of action relies on the same set of allegations to plead a claim for willful racial discrimination in violation of 42 U.S.C. § 1981. (*Id.* at 7-9).

His third cause of action also relies on the same set of allegations, except that he contends GM's and the Union's actions were motivated by discriminatory animus based upon his disabilities. (*Id.* at 9-11).

Lastly, Liggons' fourth cause of action alleges a claim for a "pattern of ongoing retaliation against him for engaging in protected activities in violation of Title VII of the Civil Rights Act . . ." arising from GM's and the Union's treatment of him after he filed charges of discrimination against both Defendants (*Id.* at 12-13).

### III.  STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555. A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a

3

defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 596).

## IV. ANALYSIS

GM moves to dismiss Liggons' complaint, contending his claims are preempted by § 301 of the Labor Management Relations Act ("LMRA") because they are exclusively governed by the terms of a collective bargaining agreement, and his claims are time-barred when properly construed as § 301 claims. (Doc. No. 12).

The Supreme Court has interpreted section 301 of the LMRA "to require federal pre-emption of state law-based actions because federal law envisions a national labor policy that would be disturbed by conflicting state interpretations of the same CBA." *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382 (6th Cir. 1991) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957)). State law claims are preempted when they are "'inextricably intertwined with consideration of the terms of the labor contract' . . . and when application of a state law to a dispute 'requires the interpretation of a collective-bargaining agreement.'" *Jones*, 939 F.2d at 382 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) and *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

As Liggons contends, (Doc. No. 13 at 4-8), the Supreme Court and the Sixth Circuit have applied the § 301 preemption doctrine only to state law claims and have not held the doctrine applies to federal discrimination and retaliation claims like Liggons'. *See, e.g., Watts v. United Parcel Serv., Inc.*, 701 F.3d 188, 191-92 (6th Cir. 2012) (holding "the motivating purpose of § 301

4

preemption" did not apply to plaintiff's federal cause of action brought in federal court). A plaintiff may assert "a separate, statutorily created federal cause of action independent from a CBA-based contract claim under the LMRA." *Id.* at 192.

It is not sufficient, however, for Liggons to characterize his claims as distinct from a LMRA claim. Instead, the substance of his allegations determines whether his causes of action arise under § 301 or a different provision of federal law. In this instance, Liggons' discrimination claims in fact are § 301 claims because the harm he alleges depends upon an interpretation of the terms of the CBA. *Martin v. Lake Cnty. Sewer Co., Inc.*, 269 F.3d 673, 679 (6th Cir. 2001) ("Although Martin alleges violations of the FLSA, these claims rely on an interpretation of the terms of the underlying CBA.").

In order to recover damages for race discrimination, Liggons must prove he was harmed by some action Defendants took because of his race. *See Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)(1)); *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citing 42 U.S.C. § 1981). The same holds true for Liggons' disability discrimination claim. *See Tennial v. United Parcel Serv.*, 840 F.3d 292, 306 (6th Cir. 2016) (The plaintiff's "disability must be a 'but-for' cause of the adverse employment action.") (quoting *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012)).

The adverse employment actions Liggons identifies depend upon his rights under the CBA. While he attempts to deflect attention from the CBA, he offers no other plausible source for the rights he contends were injured. (*See, e.g.,* Doc. No. 1 at 6 (suspensions were "not authorized per contractual language"; GM "failed to consider language" governing personal absences; certain disciplinary sanction was "contractually void.") and at 7 (Union failed to represent him in grievance proceedings "over the aforementioned series [of] disciplinary and wage issues that <u>clearly breached the labor contractual provisions</u>") (emphasis added)).

5

Liggons' discrimination claims necessarily depend on the assumption that the terms of the CBA entitle him to what he claims he did not receive based upon his race and disability. As a result, those claims cannot be resolved without interpreting the terms of the CBA. Sixth Circuit precedent establishes that such claims in fact are § 301 claims subject to a six-month statute of limitations. *Martin*, 269 F.3d at 679. Liggons does not allege any specific discriminatory conduct occurred in the six months immediately preceding the filing of his complaint on June 2, 2020. Therefore, Liggons' claims alleging Defendants discriminated against him on the basis of his race and disability in violating his rights under the CBA are barred by the statute of limitations.

Liggons' retaliation claim fares better. A Title VII retaliation claim has different elements than a Title VII discrimination claim, because the "'materially adverse action' element of a Title VII retaliation claim is substantially different from the 'adverse employment action' element of a Title VII race discrimination claim." *Laster v. City of Kalamazoo*, 746 F.3d 714, 719 (6th Cir. 2014).

A plaintiff asserting a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). The Supreme Court specifically tied this standard "to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." *Id.* at 69.

Thus, while Defendants "may rely on the CBA in defense of [Liggons' retaliation] claim, [his] claim itself does not depend on the CBA." *Watts*, 701 F.3d at 193. Accepting his allegations as true, I conclude Liggons has stated a plausible claim for retaliation in violation of Title VII.

## V. CONCLUSION

For the reasons stated above, I conclude Liggons' race and disability discrimination claims in fact are untimely hybrid § 301 claims and dismiss those claims. I also conclude Liggons has pled a

6

plausible claim for retaliation on the basis of race in violation of Title VII. Therefore, I grant GM's motion to dismiss in part and deny it in part. (Doc. No. 12).

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge

7